UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLON BLACHER, CDCR #G50077,<br><br>  Plaintiff,<br><br>  vs.<br><br>RALPH DIAZ, et al.,<br><br>  Defendants. | Case No.: 3:20-cv-01270-LAB-MDD<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 3]**<br><br>**2) DISMISSING FRIVOLOUS CLAIMS PURSUANT TO 28 U.S.C. § 1915(e)(2) & 28 U.S.C. § 1915A(b)**<br><br>**3) DENYING MOTION FOR TEMPORARY RESTRAINING ORDER [ECF No. 2]**<br><br>**4) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF SUMMONS AND COMPLAINT PURSUANT TO 28 U.S.C. § 1915(d) & Fed. R. Civ. P. 4(c)(3)** |

Plaintiff Marlon Blacher, currently incarcerated at Richard J. Donovan State Prison ("RJD") located in San Diego, California, and proceeding pro se, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 and Exhibits in support of his Complaint. *See*

1

Compl., ECF Nos. 1, 1-1. Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a), but did file a CDCR Inmate Statement Report and Prison Certificate, which the Court liberally construes as his Motion to Proceed In Forma Pauperis ("IFP"). *See* ECF No. 3. Plaintiff has also filed a Motion for a Temporary Restraining Order ("TRO"). *See* ECF No. 2.

## I. Motion to Proceed IFP

"The Prison Litigation Reform Act (PLRA) instituted a 'three-strikes' rule in an effort to disincentivize frivolous prisoner litigation." *Hoffmann v. Pulido*, 928 F.3d 1147, 1148–49 (9th Cir. 2019). "Pursuant to the PLRA, once a prisoner has had three actions dismissed as frivolous or malicious, or for failure to state a claim upon which relief may be granted, that prisoner is no longer permitted to file an action in forma pauperis unless the prisoner is in imminent danger of serious physical injury." *Id*. (citing 28 U.S.C. § 1915(g)). This "broad language covers all such dismissals: It applies to those issued both with and without prejudice to a plaintiff's ability to reassert his claim in a later action." *Lomax v. Ortiz-Marquez*, __ U.S. __, No. 18-8369, 2020 WL 3038282, at *3 (U.S. June 8, 2020).

A court "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (citation omitted). The Court takes judicial notice that Plaintiff has accumulated at least three strike dismissals pursuant to 28 U.S.C. § 1915(g). Those cases are: (1) *Blacher v. Diaz*, No. 1:11-cv-1993-SKO (E.D. Cal.), ECF No. 12 (Sept. 24, 2012 order dismissing action for failure to state a claim); (2) *Blacher v. Dieball*, No. 2:14-cv-7985 (C.D. Cal.), ECF No. 7 (Dec. 2, 2014 order dismissing action as frivolous, malicious, or failing to state a claim upon which relief could be granted); (3) *Blacher v. Villamarin*, No. 2:15-cv-3061 (C.D. Cal.), ECF No. 68 (Aug. 11, 2017 order dismissing action after plaintiff failed to amend pursuant to court's June 23, 2017 order, granting defendants' motion to dismiss for failure to state a claim upon which relief could be granted); and (4) *Blacher v. Talley*, No. 2:16-cv-3680 (C.D. Cal.), ECF No. 74 (July 26,

2017 order granting defendants' motion to dismiss for failure to state a claim upon which relief could be granted).

Once a prisoner has accumulated three strikes, section 1915(g) prohibits his pursuit of any subsequent IFP civil action or appeal in federal court unless he faces "imminent danger of serious physical injury." *See* 28 U.S.C. § 1915(g); *Andrews v. Cervantes*, 493 F.3d 1047, 1051-52 (9th Cir. 2007) ("*Cervantes*") (noting § 1915(g)'s exception for IFP complaints which "make[] a plausible allegation that the prisoner faced 'imminent danger of serious physical injury' at the time of filing"). Although the bulk of Plaintiff's allegations are both implausible and delusional, Plaintiff's allegations that prison staff have falsely identified him to fellow inmates as a rapist or child rapist, thereby putting his life at risk, are sufficient, when considered as a "threshold procedural question" to plausibly suggest he faced "imminent" or "ongoing danger" of physical injury at the time of filing. *See* 28 U.S.C. § 1915(g); *Cervantes*, 493 F.3d at 1057 (distinguishing plausible allegations of "imminent danger" exception under § 1915(g) at the "threshold stage" as distinct from the court's duty to "evaluate the merits of the suit."); *see also Williams v. Paramo*, 775 F.3d 1182, 1190 (9th Cir. 2015) (finding allegations that prison official defendants had falsely "reveal[ed] to other inmates" and started "rumors" that plaintiff was a "convicted sex offender and child molester," and had "erroneous[ly] assign[ed] . . . an 'R' suffix to her prison file," sufficient to satisfy § 1915(g)'s imminent danger exception). Accordingly, the Court concludes Plaintiff has satisfied § 1915(g)'s imminent danger exception.

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Cervantes*, 493 F.3d at 1051. However, prisoners who are granted leave to proceed IFP remain obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams*, 775 F.3d at 1185, and regardless of whether their action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005) ("*King*"). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

Plaintiff's CDCR Statement and Prison Certificate show that he has carried an average monthly balance of $0.00, had $0.00 in average monthly deposits to his account over the 6-month period immediately preceding the filing of his Complaint and had an available balance of $0.00 on the books at the time of filing. *See* ECF No. 3 at 1; 28 U.S.C. § 1915(a)(2); *King*, 398 F.3d at 1119. Based on this accounting, the Court **GRANTS** Plaintiff leave to proceed IFP and will not assess an initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1). The full $350 fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

/ / /

**II.     Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

        A.      <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

///

B.     Plaintiff's Factual Allegations

Plaintiff's Complaint and Exhibits detail what he believes to be a far reaching conspiracy within the California Department of Corrections and Rehabilitation ("CDCR") to falsely identify him as a rapist or child rapist as a means to incite fellow inmates to kill him. *See* Compl. at 22-40; Exhs. at 1-42. He alleges that various corrections officers at both Calipatria State Prison ("CSP") and RJD, prison medical staff, medical staff of the Pioneer Medical Center, a superior court judge, one of his former attorneys, the San Diego County District Attorney's Office, owners of companies named "Predator Alert" and "Baby Alert" (sued as "John or Jane Doe"), and Mark Zuckerberg are members of this conspiracy and have committed various acts to further the conspiracy. *Id.* These acts include: falsely communicating to Plaintiff's fellow inmates, through personal communication and loudspeaker announcements, that Plaintiff is a rapist/child rapist, placing specific inmates in Plaintiff's cell to kill or attack him, and plotting to stage an escape attempt by Plaintiff during which Defendants would kill him. *Id.* Defendants allegedly told inmates they would not be prosecuted if they killed Plaintiff. *See* Compl. at 38; Exhs. A-F.

Plaintiff also alleges that medical staff at Pioneer Medical Center, where Plaintiff was taken for treatment, performed needless blood tests, retained his urine for unknown purposes, and tricked him into signing a document that purportedly "signed his life away." Compl. at 26-28. In addition, Plaintiff alleges that prison staff placed a camera inside his cell in the Administrative Segregation Unit ("ASU") at RJD which was then broadcast on Facebook Live. *Id.* at 29-31. Female prison staff also watched the camera feed, and according to Plaintiff, viewed him while he was urinating and ridiculed his penis size. *Id.* The camera feed was also linked to websites named "Predator Alert" and "Baby Alert" which broadcast false allegations that Plaintiff is a rapist or child rapist and put out a multimillion dollar bounty for him. *Id.*

Finally, Plaintiff also alleges that prison staff have urinated into his food and blocked his radio from receiving a signal. *Id.* at 31-37. He further claims that medical staff at

///

Pioneer Medical Center placed implants in his head which monitor his brainwaves broadcast his thoughts on Facebook Live. *Id*.

### C. 42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### D. Rule 8

Rule 8 of the Federal Rules of Civil Procedure provides that in order to state a claim for relief in a pleading it must contain "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(1) & (2); *see McHenry v. Renne*, 84 F.3d 1172, 1178–80 (9th Cir. 1996) (upholding Rule 8(a) dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"); *Cafasso, United States ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (citing cases upholding Rule 8 dismissals where pleadings were "verbose," "confusing," "distracting, ambiguous, and unintelligible," "highly repetitious," and comprised of "incomprehensible rambling"). As such, the Court concludes that the bulk of Plaintiff's Complaint fails to comply with Rule 8.

### E. Discussion

Plaintiff's forty-seven (47) page Complaint and forty-two (42) pages of Exhibits are a litany of delusional allegations against twenty-nine (29) Defendants who he believes to be involved in a conspiracy to kill him. With the exception of the Eighth Amendment and

First Amendment retaliation claims discussed below, his allegations are mostly implausible and delusional. A pleading is "factual[ly] frivolous[]" if "the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 25-26 (1992). "[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact. . . . [The] term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). When determining whether a complaint is frivolous, the court need not accept the allegations as true, but must "pierce the veil of the complaint's factual allegations," *id.* at 327, to determine whether they are "'fanciful,' 'fantastic,' [or] 'delusional.'" *Denton*, 504 U.S. at 33 (quoting *Neitzke*, 490 U.S. at 328).

Thus, to the extent Plaintiff claims that the CDCR, wardens, prison staff, medical center staff, the Attorney General of California, Deputy Attorneys General, a superior court judge, a private attorney, Mark Zuckerberg, the District Attorney of San Diego, and owners of websites are involved in a conspiracy to kill him, broadcast a livestream of his cell on Facebook Live and on websites, place a bounty on him, and insert implants in his head to monitor his brainwaves and thoughts, these allegations "rise to the level of the irrational or the wholly incredible." *Denton*, 504 U.S. at 33. Because these claims are factually frivolous, they must be dismissed as to the Defendants involved pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and 19195A(b) without leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1127 n.8 (9th Cir. 2000) (en banc) (noting that if a claim is classified as frivolous, "there is by definition no merit to the underlying action and so no reason to grant leave to amend).

        1.    <u>Eighth Amendment Claims</u>

Plaintiff does, however, make some specific allegations about several individual prison officials' actions. For example, Plaintiff alleges that in August of 2019, unnamed correctional peace officers at CSP began "introducing publications" that falsely identified

Plaintiff as a rapist and child rapist with the intent to incite inmates to attack him. Compl. at 21. Plaintiff further claims that "on or about the 20th day of March 2020," Defendant Villa "falsely assert[ed] the Plaintiff is a 'rapist" and 'child molester' . . . [and] a 'baby rapist' and 'kid rapist.'" *Id*. at 22. According to Plaintiff, Villa spoke to Defendants Rohotas, Goodson and Cowey "and various inmates, which Defendant Villa direct[ed] . . . to 'remove' and otherwise physically harm Plaintiff." *Id*. Plaintiff further alleges that "[o]n or about the 22nd day of March, 2020," Defendants Villa, Rohotas, and Allegre were talking with each other when "an inmate in or about cell 104-107 summed[ed] Defendant Allegre" and told him "of a plot to seriously injure or even kill the Plaintiff." *Id*. Allegre responded that he wanted to see Plaintiff "get fucked up or killed." *Id*. Defendants Goodson and Cowey arrived at the same location and were told of the threat to Plaintiff. *Id*. at 23. They responded by "laugh[ing] and jok[ing] and agreed with Allegre that they also wanted to see Plaintiff injured. *Id*. Defendant Rohotas told Allegre and Cowey not to intervene and to permit inmates to "roll him [the Plaintiff] up." *Id*.

On March 26, 2020, Plaintiff told an unnamed correctional peace officer about the threats to his life and was taken to the program office. *Id*. He was placed in CSP's ASU on that same date by Defendant Cowey because "confidential information was received indicat[ing] [Plaintiff has] been targeted for assault on Facility D." *See* Exh. D. According to Plaintiff, Defendant Cowey told him he did not believe there was a threat to Plaintiff's life but rather that Plaintiff was trying to "roll up" because he "ran up a debt on the yard and is trying to avoid paying it." Compl. at 23.

On April 2, 2020, Plaintiff was in CSP's ASU. *Id*. at 24; Exh. A at 10. While there, Plaintiff alleges he heard unnamed correctional officers on 2nd and 3rd watch discussing placing specific inmates in Plaintiff's cell in order to kill him. Compl. at 25; Exh. A. at 10. He alleges he also heard these individuals discuss their plans to raid Plaintiff's ASU cell and kill him. Compl. at 25. Plaintiff claims the stress of the threats made by Defendants Villa, Rohotas, Goodson, Allegre, Cowey and the ASU correctional officers on 2nd and 3rd watch "[took] a toll on the Plaintiff's health," and when officers entered his cell they

found Plaintiff "sprawled out on the floor of the cell unable to feel [his] legs and experiencing chest pains." *Id*. at 26. After being examined at the Correctional Treatment Center ("CTC"), staff determined Plaintiff would need to be treated by an outside medical facility; Plaintiff was taken by wheelchair to Pioneer Medical Center and later released. *Id*.

Threats to both Plaintiff's safety and health are subject to the Eighth Amendment's demanding deliberate indifference standard. *See Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016). "A prison official acts with 'deliberate indifference . . . only if the [official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), overruled on other grounds by *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. (quoting *Farmer*, 511 U.S. at 837). In addition, a Plaintiff must allege he suffered a physical injury which is more than de minimus. *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002); *Fournerat v. Fleck*, No. EDCV 19-0961 AB (AS), 2020 WL 4495483, at *6 (C.D. Cal. July 7, 2020).

"California's . . . prisoners may be murderers, rapists, drug dealers, and child molesters, but California is responsible for protecting even those sorts of people from murder by other prisoners. Indeed, the Eighth Amendment requires that prison officials 'must take reasonable measures to guarantee the safety of the inmates.'" *United States v. Williams*, 842 F.3d 1143, 1153 (9th Cir. 2016) (quoting *Farmer*, 511 U.S. at 833 ("[P]rison officials have a duty [under the Eighth Amendment] . . . to protect prisoners from violence at the hands of other prisoners.")). Under these standards, the Court concludes that, when liberally construed, Plaintiff's allegations are serious and specific enough to plausibly state an Eighth Amendment claim for relief as to Defendants Villa, Rohotas, Goodson, Allegre and Cowey. *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989) (labeling prisoner a "snitch" in the

10

presence of other inmates is sufficient to state a claim of deliberate indifference to an inmate's safety); *Crane v. Gonzales*, No. CV-F-03-6339 OWW WMW P, 2008 WL 2168927, at *2 (E.D. Cal. May 23, 2008) (calling a prisoner a "child molester" in presence of fellow inmates stated Eighth Amendment claim), *report and recommendation adopted*, No. CV-F-03-6339 LJO WMW PC, 2008 WL 2676780 (E.D. Cal. June 30, 2008); *Adams v. Tilton*, No. 1:07-CV-00791 GSA PC, 2009 WL 2915100, at *13 (E.D. Cal. Sept. 9, 2009) (calling plaintiff a "Chester" in front of other inmates is akin to calling him a "snitch").

The claims against unnamed ASU correctional officers on 2nd and 3rd watch, whom Plaintiff merely describes as "All Calipatria State Prison Administrative Segregation Corrections Officers and Medical Department Staffing Persons," however, must be dismissed pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b) because Plaintiff has made no specific allegations against any individual ASU correctional officer in relation to his Eighth Amendment claims. "A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each particular doe defendant violated his rights." *Cuda v. Employees/Contractors/Agents at or OCCC*, 2019 WL 2062945, at *3-4 (D. Haw. May 9, 2019). A plaintiff may seek discovery to obtain the names of the Does and later amend his pleading in order to substitute the true names of those defendants, unless it is clear that discovery will not uncover their identities, or that his complaint is subject to dismissal on other grounds. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (emphasis added) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). Here, with respect to the unnamed 2nd and 3rd Watch ASU Officers, Plaintiff has failed to link any particular constitutional violation to any specific individual state actor. Plaintiff must, at a minimum, allege some factual content to describe how each individual person he seeks to sue violated the Constitution. *Iqbal*, 556 U.S. at 676-77; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). He may not attribute liability to a group of unidentified defendants, but must "set forth specific facts" as to each
///

individual defendant's wrong. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

### 2. Retaliation Claim

Plaintiff also alleges that "on or about the 20th day of March 2020," Defendant Villa "falsely assert[ed] the Plaintiff is a 'rapist" and 'child molester' . . . [and] a 'baby rapist' and 'kid rapist,'" and that this action was "seemingly in retaliation for the Plaintiff having petition[ed] the government for the redress of grievances re: mail crimes . . . ." Compl. at 22. To state a valid First Amendment retaliation claim, Plaintiff must assert: (1) a state actor took some adverse action against him, (2) the adverse action was taken because he engaged in some protected conduct, (3) the state actor's acts "would chill or silence a person of ordinary firmness from future First Amendment activities," and (4) the adverse action "did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009), that is "more than minimal." *Rhodes*, 408 F.3d at 568 n.11.

Plaintiff's March 20, 2020 allegations against Defendant Villa suggest he seeks to bring both an Eighth Amendment as well as a First Amendment retaliation claim against him. Plaintiff has alleged sufficient facts to establish that Villa (a state actor) took some adverse action against him (falsely asserted Plaintiff was a rapist, child molester, baby rapist and kid rapist), and that Villa's actions "would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 567-78. Further, there is no "legitimate correctional goal" served by falsely labeling Plaintiff as a rapist or child rapist. Whether Plaintiff has alleged sufficient facts to show Villa took this action *because* Plaintiff engaged in protected conduct, however, is not as evident. Plaintiff states Villa made the false accusations against him "seemingly" because Plaintiff "petitioned the government for the redress of grievances." Compl. at 22. Plaintiff has not explained exactly what grievances he filed or when he filed them, but he does claim that Villa interfered with

12

his mail in some manner and that the grievances he filed were regarding "mail crimes." *Id.* Thus, at this stage of the proceedings, the Court concludes that Plaintiff has also pled sufficient facts to plausibly state a retaliation claim against Defendant Villa regarding the March 20, 2020 incident. *Iqbal*, 556 U.S. at 678.

### III. Motion for a Preliminary Injunction and a Temporary Restraining Order [ECF No. 2]

Plaintiff also seeks immediate injunctive relief. *See* Mot. for TRO, ECF No. 2. In his motion, Plaintiff makes the same basic allegations as he does in his Complaint. *Id.* He asks the Court to enjoin the Defendants from imposing "the domestic terrorism and conspiracy against rights . . . upon the neutral, presently peaceful Plaintiff," and asks that an order issue "restraining such Defendants from perpetrating such domestic terrorism and conspiracy against rights, that transpire on a continuous basis, against the Plaintiff. *Id.* at 2.

To the extent Plaintiff seeks a TRO without notice upon an adverse party, he cannot prevail because his submission fails to set out "specific facts in an affidavit or a verified complaint . . . [which] clearly show that immediate and irreparable injury, loss, or damage will result . . . before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A); *Gomez v. Vernon*, 255 F.3d 1118, 1128 (9th Cir. 2001) ("[I]njunctive relief is 'to be used sparingly, and only in a clear and plain case,'" especially when the court is asked to enjoin the conduct of a state agency) (quoting *Rizzo v. Goode*, 423 U.S. 362, 378 (1976)).

Second, a plaintiff seeking a preliminary injunction must establish: (1) a likelihood of succeed on the merits; (2) a likelihood that plaintiff will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995); *see also Stuhlbarg Intern. Sales*

*Co., Inc. v. John D. Brushy and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (standards for issuing a TRO are "substantially identical" to those for issuing a preliminary injunction). As the movant, Plaintiff "must do more than merely allege imminent harm sufficient to establish standing; [he] must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674-675 (9th Cir. 1988) (speculative injury does not constitute irreparable harm sufficient to warrant granting a preliminary injunction) (internal citations omitted).

Plaintiff's allegations do not meet these standards. The bulk of his claims are frivolous, therefore he has not and cannot show any likelihood of success on the merits of those claims. *See Pimental v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) (stating that "at an irreducible minimum," the party seeking immediate injunctive relief "must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation"). And while a few of his allegations are sufficient to survive initial screening, he has not established that he will "suffer irreparable harm in the absence of preliminary relief," nor has he "demonstrated immediate threatened injury." *Winter*, 555 U.S. at 20; *Caribbean Marine Servs. Co., Inc.*, 844 F.2d at 674-675. For these reasons, Plaintiff's Motion for TRO and Preliminary Injunction (ECF No. 2) is **DENIED**.

### IV. Conclusion and Order

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 3).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to forward whatever the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DENIES** Plaintiff's Motion for TRO (ECF No. 2).

5. **DISMISSES** Plaintiff's claims as to the following Defendants as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), and **DIRECTS** the Clerk of Court to terminate them as parties in this case:

- Ralph Diaz
- W.L. Montgomery
- All Calipatria State Prison Administrative Segregation Correctional Officers and Medical Department Staffing Persons
- Weschel, CCII, Fac. D, Calipatria
- All Calipatria State Prison Correctional Peace Officers
- All Pioneer's Medical Center Staffing Persons
- All RJD Correctional Facility, Fac. D, Bldg. 7 Staffing Persons, Correctional Peace Officers, Medical Dept. Staffing Persons, and Mental Health Staffing Persons
- Warden, RJD Correctional Facility
- M. Guevera Ortega, PERN #121759
- R. Covert, Correctional Facility Inmate Appeals Office
- All RJD Correctional Facility, Fac. A, Bldg. 5 2nd and 3rd Watch Correctional Peace Officers
- Deborah B. Wadleigh, Supervising Deputy Attorney General
- Jeremy Doernberger, Deputy Attorney General
- Xavier Becerra, Attorney General
- John or Jane Doe I
- John or Jane Doe II
- CCPOA
- CDCR
- State of California
- Theresa Canepa, Judge of the Superior Court
- Linda Fullerton
- Mark Zuckerberg, Facebook, CEO/Chairman/President
- District Attorney, County of San Diego
- E. Frijas, CCII at RJD

///

///

6. **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (ECF No. 1) upon Defendants VILLA, ROHOTAS, GOODSON, ALLEGRE and COWEY and forward it to Plaintiff along with a blank U.S. Marshal Form 285. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a certified copy of his Complaint and the summons so that he may serve them upon Defendants VILLA, ROHOTAS, GOODSON, ALLEGRE and COWEY.

7. Upon receipt of this "IFP Package," Plaintiff must complete the Form 285s as completely and accurately as possible, include an address where each named Defendant may be found and/or subject to service, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

8. **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon the named Defendants as directed by Plaintiff on the USM Form 285s provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

9. **ORDERS** Defendants, once they have been served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). See 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," the defendant is required to respond); and

10. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the

manner in which a true and correct copy of that document has been was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon Defendants may be disregarded.

**IT IS SO ORDERED**.

DATED: September 23, 2020

_____
Hon. Larry Alan Burns
Chief United States District Judge