1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  MARLON BLACHER,<br>CDCR #G-50077, | Case No.: 3:20-CV-01270-LAB-MDD |
| 12 | |
| 13                         Plaintiff, | **ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY** |
| 14              vs. | **JUDGMENT FOR FAILURE TO**<br>**EXHAUST PURSUANT TO 42** |
| 15 | **U.S.C. § 1997e(a) [Dkt. 45]** |
| 16  RALPH DIAZ, et al., | |
| 17                         Defendants. | |

18          Marlon Blacher is currently incarcerated in the Pasco County Jail in Land O

19     Lakes, Florida. On July 6, 2020, he filed a civil action under 42 U.S.C. § 1983

20     against several jail guards from the Calipatria and Richard J. Donovan prisons in

21     California where he was previously incarcerated. (Dkt. 1). On September 23, 2020,

22     the Court granted his application to proceed in forma pauperis ("IFP"), screened

23     his Complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, dismissed some

24     of his claims, and directed the U.S. Marshal to effect service upon the remaining

25     Defendants pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3). (Dkt. 5).

26          On February 1, 2022, Defendants Cowey, Goodson, Rohotas, Villa, and

27     Allgeyer collectively filed a Motion for Summary Judgment. (Dkt. 45). The Court

28     then notified Blacher of the requirements for opposing summary judgment under

1  *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc), and *Albino v. Baca*, 747
2  F.3d 1162 (9th Cir. 2014) (en banc). (Dkt. 47). On March 21, 2022, Blacher filed
3  an Opposition to Defendants' Motion. (Dkt. 51). Defendants replied on April 14,
4  2022. (Dkt. 52).

5  **I.  PROCEDURAL BACKGROUND**

6          The Court previously held that Blacher has stated plausible claims against
7  Defendants under the Eighth Amendment for failure to protect and the First
8  Amendment for retaliation. (Dkt. 5 at 7–13). Discovery was stayed while the Court
9  considered Defendants' Motion for Summary Judgment. (Dkt. 53).

10  **II.  FACTUAL BACKGROUND**

11          Blacher alleges that in August of 2019, unnamed correctional peace officers
12  at Calipatria began "introducing publications" falsely identifying him as a rapist and
13  child rapist with the purpose of inciting other inmates to attack him. (Compl. at 21).
14  According to the complaint, "on or about the 20th day of March 2020," Defendant
15  Villa "falsely assert[ed] the Plaintiff is a 'rapist' and 'child molester' . . . [and] a 'baby
16  rapist' and 'kid rapist.'" (*Id*. at 22). Villa and other defendants then allegedly spoke
17  to "various inmates, which Defendant Villa direct[ed] . . . to 'remove' and otherwise
18  physically harm Plaintiff." (*Id*.). Blacher further alleges that while Defendants Villa,
19  Rohotas, and Allgeyer were talking with one another, "an inmate in or about cell
20  104-107 summon[ed] Defendant Allgeyer" and told him "of a plot to seriously injure
21  or even kill the Plaintiff." (*Id*.). Allgeyer supposedly responded that he wanted to
22  see Blacher "get fucked up or killed." (*Id*.). Defendants Goodson and Cowey were
23  then told of the threat to Blacher. (*Id*. at 23). They responded by "laugh[ing] and
24  jok[ing] and agreed with Allgeyer that they also wanted to see Blacher injured. (*Id*.).
25  Defendant Rohotas told Allgeyer and Cowey not to intervene and to permit inmates
26  to "roll him [Blacher] up." (*Id*.).

27          Blacher maintains that he told an unnamed correctional peace officer about
28  the threats to his life and was taken to the program office. (*Id*.). He was placed in

2

an administrative segregation unit that same day by Defendant Cowey who had received "confidential information . . . indicat[ing] [Blacher has] been targeted for assault on Facility D." (*Id*. at Ex. D). Defendant Cowey allegedly told Blacher he did not believe there was a threat to his life but rather that Blacher was trying to "roll up" because he "ran up a debt on the yard and is trying to avoid paying it." (*Id*. at 23).

Blacher remained in segregation through April 2, 2020. (*Id*. at 24; Ex. A at 10). While there, he states he heard unnamed correctional officers on "2nd and 3rd watch" discussing placing specific inmates in his cell to kill him. (*Id*. at 25; Ex. A. at 10). He also heard the officers discuss plans to raid his cell and kill him. (*Id*. at 25). The stress of the threats made by Defendants Villa, Rohotas, Goodson, Allgeyer, Cowey and the correctional officers on 2nd and 3rd watch "[took] a toll on the Plaintiff's health," and when officers entered his cell, they found Blacher "sprawled out on the floor of the cell unable to feel [his] legs and experiencing chest pains." (*Id*. at 26). Blacher was initially treated for stress at the Calipatria prison. But prison staff determined he should be treated at an outside medical facility, so Blacher was taken to Pioneer Medical Center and later released. (*Id*.).

Blacher also alleges when Defendant Villa "falsely assert[ed] the Plaintiff is a 'rapist' and 'child molester' . . . [and] a 'baby rapist' and 'kid rapist,'" he did so "seemingly in retaliation [because Blacher] petition[ed] the government for the redress of grievances re: mail crimes . . ." (*Id*. at 22).

## III.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants maintain they are entitled to summary judgement because Blacher failed to properly exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a), prior to filing his 42 U.S.C. § 1983 complaint in this Court on July 6, 2020. (Dkt. 45 at 1).

Summary judgment is generally proper if the movant shows there is no genuine dispute as to any material fact and he or she is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Washington Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether a fact is disputed or undisputed, must be supported by: (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although this is not required. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants have the burden of proving there was an available administrative remedy and that Blacher didn't avail himself of it. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015); *Albino*, 747 F.3d at 1172. If this is shown, the burden of production shifts to Blacher "to show that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191. Only "[i]f the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, [is] a defendant [] entitled to summary judgment under Rule 56." *Albino*, 747 F.3d at 1166. Additionally, "[a] [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). Finally, district courts must "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

//

**A. Exhaustion**

Defendants have submitted the declaration of Howard E. Moseley, Associate Director of the Office of the Appeals (formerly named the "Inmate Appeals Branch"). (*See* Dkt. 45-3, Moseley Declaration ("Moseley Decl.")). Moseley explains that the California Department of Corrections and Rehabilitation grievance procedures were changed as of June 1, 2020. (*Id.* at ¶ 5). Prior to June 1, 2020, "a CDCR prisoner was required to follow the procedures set forth in California Code of Regulations, Title 15, sections 3084-3085 (repealed effective June 1, 2020)." (*Id.*). Blacher's claims occurred in 2019 and early 2020, so the earlier regulations apply.

**1. Legal Standard**

Under the Prison Litigation Reform Act of 1995, an inmate must exhaust available administrative remedies before bringing suit to challenge prison conditions. *Ross v. Blake*, 578 U.S. 632, 635–36 (2016) (quoting 42 U.S.C. § 1997e(a)). The exhaustion requirement is mandatory. *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted). The PLRA requires prisoners to follow the "critical procedural rules" of the prison. *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Grievance procedures are available if they are "capable of use to obtain some relief for the action complained of." *Ross*, 578 U.S. at 642 (quotes omitted); *see also Williams*, 775 F.3d at 1191 ("To be available, a remedy must be available 'as a practical matter'; it must be capable of use; at hand.") (quotes omitted). In *Ross*, the Supreme Court noted three circumstances in which an administrative remedy, although officially on the books, is *not* capable of use to obtain relief. 578 S. Ct. at 632. These are when: (1) the "administrative procedure . . . operates as

a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* (citations omitted).

Applying these principles, the Ninth Circuit has held that "[w]hen prison officials fail to respond to a prisoner's grievance within a reasonable time, the prisoner is deemed to have exhausted available administrative remedies within the meaning of the PLRA." *See Andres v. Marshall*, 854 F.3d 1103, 1105 (9th Cir. 2017) (finding that RJD's 6-month failure to respond to an inmate grievance rendered prisoner's administrative remedies unavailable). Also, administrative remedies are "plainly unavailable" when prison officials "screen out an inmate's appeals for improper reasons," *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010), or when they provide an inmate mistaken instructions as to the means of correcting a claimed deficiency, or reject a claim as untimely after compliance proves impossible. *See Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010). Administrative remedies are also unavailable if the prisoner shows an "objectively reasonable" basis for believing that officials will retaliate against him if he files a grievance. *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015).

## 2. CDCR's Exhaustion Requirements

The Court finds Defendants have offered sufficient undisputed evidence to prove that during the pertinent time alleged in Blacher's complaint, Calipatria had in place an "administrative remedy" for resolving claims like his. Specifically, the declarations of P. Lopez, Correctional Counselor II, Grievance Coordinator at Calipatria, establishes that before June 1, 2020, Title 15 of the California Code of Regulations permitted a prisoner to appeal "any policy, decision, action, condition, or omission by the department or its staff that [he] can demonstrate as having a

material adverse effect upon his . . . health, safety, or welfare." (Dkt. 45-4, Lopez Declaration ("Lopez Decl.") ¶ 3). Since January 28, 2011 – and during the times alleged in Blacher's Complaint – there were three levels of review. (*Id*. ¶ 5; *see also* Cal. Code Regs. tit. 15, § 3084.8(b)(1)). A California prisoner must "pursue his appeals through all levels of the administrative appeal process unless excused from one of the levels under Title 15." (Lopez Decl. ¶ 6). To initiate a grievance, an inmate must describe the problem, name the staff members involved, and include the action requested. (*Id*. ¶ 5).

Inmate grievances at the first level of review are submitted on a form to the appeals coordinator at the institution, but the coordinator may bypass the first level under certain circumstances. (*Id*. ¶ 6). One is when an inmate alleges staff misconduct. Cal. Code Regs. tit. 15, §§ 3084.9(i). If the grievance is bypassed or not resolved at the first level, the prisoner must, "within 30 calendar days . . . upon receiving [the] unsatisfactory departmental response," *id.* § 3084.8(b)(3), seek a second level of administrative review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole Administrator, or the equivalent." *Id.* § 3084.7(b), (d)(2). If not satisfied with the second level response, the inmate can submit his grievance to the Office of Appeals for third level review in Sacramento. Cal. Regs. Code tit. 15, § 3084.7(c).

California regulations require prison staff to respond to first level complaints within "30 working days from the date of receipt by the appeals coordinator." Cal. Code Regs. tit. 15, § 3084.8(c)(1). Second level appeals must also be completed within thirty working days. *Id.* § 3084.8(c)(2). Third level responses must be completed in 60 working days from date of receipt. *Id.* § 3084.8(c)(3). Time limits may be extended if certain exceptions are shown, but none apply here.

### 3. Blacher's Administrative Appeal History

To reiterate, Blacher alleges that Defendants failed to protect him from serious harm in violation of his Eighth Amendment rights and then retaliated

7

against him for filing grievances over the lack of protection in violation of his First Amendment rights. (Compl. at 22–24).

The uncontested evidence establishes that at all times pertinent to Blacher's Complaint, Lopez was the prison official "responsible for screening, logging, and processing non-healthcare related grievances submitted by inmates . . ." (Lopez Decl. ¶ 2). Specifically, Lopez was responsible for "reviewing inmate grievances to ensure that they comply with regulations, coordinat[ing] the processing of grievances, and maintain[ing] records associated with grievances." (*Id.*). Lopez is also the custodian of records who verifies whether an inmate has submitted a non-healthcare related grievance on a particular issue. (*Id.*).

At the Attorney General's request, Lopez searched for grievances submitted by Blacher from March 2020, when the allegations first giving rise to Blachard's lawsuit occurred, through July 6, 2020, when Blacher filed his lawsuit. (*Id.* ¶ 13). In addition, Associate Director Moseley conducted a search of the facility computer system for all non-health care related appeals submitted by Blacher. (Moseley Decl. ¶ 6).

Along with their declarations, Lopez and Moseley attached exhibits including copies of Blacher's grievances and appeals during the pertinent time, as well as responses from prison officials. In all, Blacher submitted five grievances, which prison officials processed and are described in pertinent part below.

i.   <u>CDCR 602 Log. No. CAL-D-20-00851</u>

On March 19, 2020, Blacher submitted a grievance in which he claimed that "certain Correctional Peace Officers" are "introduc[ing] false and fraudulent" claims regarding Blacher "to the inmate population here." (Lopez Decl., Ex. C at 18). Blacher failed to name the officers whom he claimed were purportedly spreading the false information about him. (*Id.* at 18, 20). This grievance was received on May 23, 2020. (*Id.*, Ex. A at 13). About two weeks later, on June 8, 2020, prison officials "cancelled" the grievance on the ground that Blacher had failed to timely

1  submit the grievance. (*Id.* at 17). Blacher was informed that he could file an appeal
2  of the cancellation decision, but that his original grievance could only be
3  resubmitted if the appeal of the cancellation was granted. (*Id.*).

4      Instead of complying with specified procedures, Blacher submitted a copy of
5  his grievance directly to Moseley, the person in charge of the third level of review.
6  (Moseley Decl., Ex. E at 41). Moseley responded on May 11, 2020, informing
7  Blacher that he had "submitted the appeal for processing at an inappropriate level
8  bypassing required lower level(s) of review." (*Id.*). Moseley also informed Blacher
9  that his appeal had been forwarded to the Appeals Coordinator for further action.
10  (*Id.*). Blacher's appeal was subsequently screened at the second level of review
11  on June 8, 2020, and he was once again informed that his appeal had been
12  cancelled. (Lopez Decl. at 24). Blacher was also told that he could not appeal a
13  rejected appeal, but that he could file a separate appeal of the "cancellation
14  decision." (*Id.*).

15                    ii.    Log No. 16432

16      Blacher then appealed the cancellation of his previous grievance (*Id.* at 25).
17  He maintained that "due to the emergency/extraordinary circumstances" he had
18  raised his prior grievance should be "processed pursuant to the 'emergency
19  appeal' procedures." (*Id.*). On July 15, 2020, prison officials rejected this grievance
20  on the grounds that the "claim concerns the grievance and appeal regulations or
21  process and is not allowed under the California Code of Regulations, title 15." (*Id.*
22  at 23). Lopez attests that after this further rejection of his grievance, Blacher took
23  no further action. (*Id.* ¶ 18).

24                    iii.   Log No. 2004161

25      In this grievance, dated March 12, 2020, Blacher claimed that "Correctional
26  Peace Officers" selectively imposed punishment on him by spreading false and
27  fraudulent information about him to the inmate population for the purpose of
28  prompting other inmates to attack him. (Moseley Decl., Ex. G at 55–57). Blacher

9

submitted this grievance to the Office of Appeals on March 27, 2020. (*See id.* at 55). Moseley responded to Blacher's grievance on May 12, 2020, informing him that his grievance has been forwarded to the Appeals Coordinator for further action because it was again submitted for processing at an inappropriate level bypassing required lower levels of review. (*Id.* at 54).

### 4. Analysis

The undisputed record establishes that applicable administrative remedies were available to Blacher before he filed his federal lawsuit. Defendants have provided a detailed explanation of the required process by which inmates must seek administrative review of grievances. *See* Cal. Code. Regs. tit. 15, § 3084 et. seq; (*see also* Lopez Decl. ¶¶ 5–10; Moseley Decl. ¶¶ 2–5). Although these remedies available to Blacher, the record evidence establishes that he never availed himself of them. (Lopez Decl. ¶¶ 17–26; Moseley Decl. ¶¶ 6–13).

Uncontested evidence demonstrates that Blacher didn't properly follow the established process for submitting his grievances even though the rules and the process were explained to him, as were the defects in his rejected submissions. Specifically, prison officials informed Blacher the cancellation or rejection of his grievances did not exhaust his administrative remedies and advised him as to what he had to do to remedy the problems. Yet rather than follow the specified steps of the prison grievance policy, Blacher continued to attempt to bypass them.

Defendants have presented sufficient evidence establishing that there is no genuine dispute of fact regarding Blacher's failure to exhaust his rights before he filed his federal lawsuit. This satisfies their initial burden on summary judgment. *See Albino*, 747 F.3d at 1172.

### 5. Blacher's Burden

Defendants having met their initial burden of going forward, the burden now shifts to Blacher to point to evidence raising a factual dispute that he did, in fact, exhaust his administrative remedies. *See Matsushita Elec. v. Zenith Radio Corp*,

475 U.S. 574, 586 (1986). The burden can be met by submitting affidavits or other admissible discovery material showing either that he complied with the exhaustion rules or that the generally-available administrative remedies were effectively unavailable to him. *Albino*, 747 F.3d at 1172 ("[T]he burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, undue prolonged, inadequate or obviously futile.").

Blacher takes issue with the prison grievance forms. He maintains his failure to raise relevant issues or name specific Defendants in his grievance is a matter of disputed fact because the forms he was required to use made it "impossible for the Plaintiff to record all matters known" due to the space limitations on the forms. (Dkt. 51-1 at 1). He argues that he didn't get timely notice of the cancellation of his grievances because he was transferred from the Calipatria prison to the Richard J. Donovan prison in April of 2020. (Dkt. 51 at 2). He also asserts that that he used the grievance procedure at Donovan to expose a non-specific "conspiracy" to harm him through the "final level of review." (*Id.*). Finally, he contends he had "no obligation to exhaust" his administrative grievances because the prison procedure for doing so is a "dead end" and that prison officials are "unable or consistently unwilling to provide any relief" to any inmate. (*Id.* at 4).

Blacher's contentions aside, the evidence submitted by Defendants, and undisputed by Blacher, demonstrates he did not complete the exhaustion procedures as to any of his grievances. The Lopez and Moseley declarations provide a definitive list of all of Blacher's grievances filed during the relevant timeframe. In each instance, Blacher either attempted to bypass the established prison process or he gave up after being informed that he had improperly filed his grievances at the wrong level. Defendants have shown, and Blacher doesn't dispute, that he never named the individual Defendants in any of his grievances relating to the claims raised in this matter. This explains why Blacher's grievances were initially rejected. Blacher argues there was not enough "space" on the form

to identify the individual defendants by name, but the evidence demonstrates that the form is three pages long with space provided on the last page to input additional information. While Blacher used all the space on the form – including the additional space provided on the third page – he did not provide even the last names of any of the Defendants he now accuses. Instead, he devoted the entire space on the form to repeat vague allegations against unnamed individuals. (*See* Lopez Decl., Ex. C at 18–20).

Blacher's argument that his appeals were wrongfully cancelled is answered by *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005): "The obligation to exhaust 'available remedies persists as long as some remedy remains available." Here, Blacher's available remedy was to challenge the decision to cancel his appeal, not to simply ignore the established policies for presenting grievances. Blacher's decision to ignore the policies did not render them unavailable to him. *See Cortinas v. Portillo,* 754 F. App'x 525, 527 (9th Cir. 2018) ("[B]ecause [plaintiff] could have appealed his cancellation decision . . . the improper cancellation of his appeal did not render administrative remedies effectively unavailable to him.").

Although the evidence establishes that Blacher filed an additional grievance after he was transferred to the Donovan prison in April of 2020, nothing in that grievance indicated that it was related to what he alleged occurred at the Calipatria prison. The grievance merely made reference to a vague and unspecified "conspiracy." (*Id.*). Reviewing Blacher's grievance, prison officials at Donovan would have had no reason to link it to the allegations he makes in his Complaint, nor for that matter to actions that allegedly occurred at an earlier time in a different prison.

This leads to Blacher's last allegation – that the prison appeals process operates as a simple dead end. No evidence before the Court supports this charge. To the contrary, the record evidence demonstrates that the California prison system adheres to established procedures that inmates must follow in filing

grievances. The procedures are published and available for review by inmates. That Blacher failed to comply with the procedures, despite being provided with explicit instructions how to when he filed his administrative grievances does not render the procedures a "dead end." Blacher has therefore not raised a triable issue of material fact to show that the administrative grievance procedure was "unavailable" to him.

## IV.   CONCLUSION AND ORDER

Defendants are entitled to summary judgment under Rule 56 because the undisputed evidence viewed in the light most favorable to Blacher shows he failed to exhaust administrative remedies available to him. Likewise, Blacher has failed to satisfy his burden to show administrative remedies were "unavailable" to him.

The Court **GRANTS** Defendants' motion for summary judgment and **DIRECTS** the Clerk to enter a final judgment and terminate the case.

**IT IS SO ORDERED**.

Dated: July 22, 2022

_____
Hon. Larry Alan Burns
United States District Judge